UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
CHARLES BUTLER,

                          Plaintiff,

                                        <u>MEMORANDUM & ORDER</u>
          -against-                     14-CV-1429(JS)(SIL)

BRIDGEHAMPTON FIRE DISTRICT,
BRIDGEHAMPTON BOARD OF FIRE
COMMISSIONERS, and STEVEN HALSEY,

                          Defendants.
------------------------------------X
APPEARANCES
For Plaintiff:      Lawrence E. Kelly, Esq.
                    11 Cedar Bay Court
                    Bayport, NY 11705

For Defendants:     Steven Gerber, Esq.
                    Gonzalez Saggio & Harlan LLP
                    292 Madison Avenue, 19th Floor
                    New York, NY 10017

SEYBERT, District Judge:

         Plaintiff Charles Butler ("Plaintiff") commenced this

action on March 4, 2014 pursuant to 42 U.S.C. § 1983 against

defendants the Bridgehampton Fire District (the "Fire District"),

the Bridgehampton Board of Fire Commissioners (the "Board"), and

Steven Halsey ("Halsey" and together with the Fire District and

the Board, "Defendants").  Plaintiff claims Defendants retaliated

against him in violation of his First Amendment rights; that

Defendants violated Plaintiff's Fifth and Fourteenth Amendment

rights; and that Defendants' acts constituted an unlawful bill of

attainder.  Pending before the Court is Defendants motion for

partial dismissal.  (Docket Entry 6.)  For the foregoing reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

<u>BACKGROUND</u>[1]

In 2013, the Board wanted to sell a .14 acre vacant parcel of land owned by the Fire District (the "Wainscott Property" or the "Property").  (Compl. ¶¶ 37, 168.)  The Wainscott Property was located at 113 Wainscott Main Street, in East Hampton, New York and "adjoined an estate owned by Billionaire Ronald Lauder." (Compl. ¶¶ 47, 168.) A sign on the Property indicated that it was "available for purchase through the Bridgehampton Fire District." (Compl. ¶ 169.)

At the time, Plaintiff was serving as the Treasurer and Secretary of the Fire District. (Compl. ¶¶ 8, 9.)  The Fire District is a "civil and political subdivision of the State of New York."  (Compl. ¶ 2.)  Plaintiff was elected to his position and had previously served as Treasurer for "a series of terms." (Compl. ¶ 7.)

Steven Halsey, a real estate salesmen by trade, served as Chair of the Board from 2011 to December 2013.  (Compl. ¶¶ 22, 23.)  Halsey previously served as the "Long Island Representative" to George E. Pataki, the former Governor of New York State.

_____

[1] The following facts are taken from Plaintiff's Complaint and are presumed to be true for the purposes of this Memorandum and Order.

(Compl. ¶¶ 24-25.)  Plaintiff implies in his Complaint that Lauder and Halsey had a personal relationship because Lauer was "a key backer" of Governor Pataki during his three terms in Albany. (Compl. ¶ 33.)

During an open meeting held by the Board and the Fire District in 2013, the Board announced that the Fire District "had agreed to sell a vacant parcel of land owned by [the District] to Ronald Lauer for $940,000." (Compl. ¶ 28.)  Plaintiff, who was present at the meeting, was "incredulous" because he knew the Fire District received two offers to buy the Wainscott Property that were higher than Lauder's offer. (Compl. ¶¶ 38, 176.)  During the meeting, Plaintiff stated, "[a]s a citizen, I object.  I'm upset at this as a taxpayer." (Compl. ¶ 177.)  Plaintiff then revealed, during the meeting, that he knew the Board had received two offers to buy the same property for more money--one offer for $999,999 and another for $1,010,000. (Compl. ¶ 38.)  In addition, Plaintiff stated that the Property had been appraised for $1.1 million. (Compl. ¶ 38.)  John Courtney, an attorney for the District, indicated that it would be "proper procedure" for the property to be advertised and for the Fire District to accept sealed bids then "submit the sale to a public referendum." (Compl. ¶¶ 42-43.)

The Board decided to follow the procedure outlined by Courtney.  Two sealed bids were therefore submitted to the Board for consideration--Lauder's bid and one other.  (Compl ¶¶ 47, 50-

51.) However, the second bid was subsequently withdrawn and only Lauder's bid was put to a vote. (Compl. ¶¶ 50, 52.)

Plaintiff alleges that Defendants targeted and retaliated against him because he spoke out against the Board's plan to sell the Wainscott Property. Defendants began by excluding him from executive sessions of the Board. (Compl. ¶ 59.) Then, on October 22, 2013, a group of Board members handed Plaintiff the following letter:

> The Board of Fire Commissioners has decided to enact the following changes pertaining to the duties and responsibilities of your position as Secretary of the Bridgehampton Fire District, effective immediately:
> 1. You will no longer be recording the minutes of Fire District meetings, these duties will be reassigned . . .
> 2. You will no longer be responsible for any other correspondence or duties that you currently perform in relation to your position as Secretary. These duties will be reassigned.
> 3. Your workplace will be relocated to the Main District Board Room . . . .
> Please be advised that your duties and responsibilities as Fire District Treasurer remain unchanged.
> Signature of all Commissioners

(Compl. ¶ 107.) That same day, the Board (1) reduced Plaintiff's salary as Secretary to zero, (2) reduced his salary as Treasurer from $60,000 to $1,200 and (3) took away his health insurance coverage, worth approximately $20,000. (Compl. ¶¶ 84, 164, 185.) Defendants also locked him out of the District's financial data system, so that he could no longer perform his duties as Treasurer,

and changed the locks on his office.   (Compl ¶¶ 105-106, 110.)

Plaintiff received a second letter on November 22, 2013 from the

Board:

> This is to notify you that as treasurer, you
> will no longer have the authority to sign
> checks or transfer funds of the Fire District.
> ... We have also discontinued use of PIPs. We
> are working with another service to prepare
> the financial reports and to pay the
> bills . . . You are also notified that you may
> no longer approve any expense or any debt. All
> expenses and debts shall be approved by the
> Board of Fire Commissioners. All orders shall
> utilize a purchase order system, but the Board
> must first approve incurring such expense.
> Furthermore, the Board will be outsourcing
> your record keeping and bill paying functions,
> so it has decided to remove the salary of the
> Treasurer for 2014. Should you have any
> questions, you may provide them to us in
> writing for our review and consideration.
> Signatures of all five commissioners.

(Compl. ¶ 109.)   Defendants next took out a full-page newspaper

advertisement which stated that the Commission would be

"eliminating the salary of the secretary and significantly

decreasing the salary of the [T]reasurer, saving [ ] almost $60,000

in salary plus another $20,000 or more in benefits."   (Compl.

¶¶ 67, 70.)  Curiously, the advertisement also stated "[w]e believe

that it is also time to set the record straight before too many

people start believing the lies that are being spread around our

community."  (Compl. ¶ 67.)

Elections were held on December 10, 2013 and two

referendums were put to a vote:  A referendum authorizing the sale

of the Wainscott Property to Lauder passed; however, a second referendum to change the position of Treasurer of the Fire District from an elected position to an appointed position was defeated. (Compl. ¶ 125-26.) Halsey was also defeated in his bid for re-election to the Board. (Compl. ¶¶ 122-123.)

Plaintiff won re-election as the Treasurer for the District. (Compl. ¶ 123.) Nevertheless, he claims that Defendants' retaliatory conduct continued. Specifically, Plaintiff alleges that Defendants searched through Plaintiff's office and personal emails. (Compl. ¶¶ 130, 207.) Defendants then tried to force Plaintiff to resign claiming they had evidence that Plaintiff forged the fire Chief's signature. (Compl. ¶¶ 192, 207.)

Plaintiff alleges five causes of action in his Complaint: (1) First Amendment retaliation; (2) violations of Plaintiff's First Amendment right to petition the government to redress grievances; (3) violations of the constitutional right to be free from bills of attainder; (4) violations of the Plaintiff's right to due process; and (5) violations of Plaintiff's right to equal protection. Defendants move to dismiss Plaintiff's equal protection claim and certain state law allegations that Plaintiff referred to in the body of his Complaint. (Defs.' Br., Docket Entry 6-1, at 2, 4.)

<u>DISCUSSION</u>

The Court will first address the applicable legal standard before turning to the merits of Defendants' motion.

I.  <u>Standard of Review</u>

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); <u>accord</u> <u>Harris v. Mills</u>, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). <u>First</u>, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678; <u>accord</u> <u>Harris</u>, 572 F.3d at 72. <u>Second</u>, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. <u>Iqbal</u>, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>; <u>accord</u> <u>Harris</u>, 572 F.3d at 72.

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 71 (2d Cir. 1998). This has been interpreted broadly to include

7

any document attached to the Complaint, any statements or documents incorporated in the Complaint by reference, any document on which the Complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

I.   Equal Protection

Plaintiff alleges that Defendants violated his right to equal protection by "singling him out for unfavorable treatment" because he spoke out at a public meeting against the agreement to sell the Wainscott Property to Ronald Lauder. (Compl ¶¶ 312-13, 317.) Defendants argue that Plaintiff failed to allege a violation of the Equal Protection Clause because he did not assert that he was treated differently than any other individuals. (Defs.' Br. at 3.) Plaintiff argues that Commissioner Halsey was similarly situated to Plaintiff and "[t]he hundreds of paragraphs" in the Complaint "show the duality" between the treatment of Halsey and Plaintiff's treatment. (Pl.'s Br., Docket Entry 8, ¶ 59.)

"The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated persons alike." Missere v. Gross, 826 F. Supp. 2d 542, 560 (S.D.N.Y. 2011). Here, Plaintiff does not allege to be a member of a protected class, and therefore may proceed under one of two equal protection theories: selective enforcement or "class of one." Id.

8

In order to adequately allege a selective enforcement claim, a plaintiff must allege: "(1) [he was] treated differently from other similarly situated individuals and (2) this differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." MacPherson v. Town of Southampton, 738 F. Supp. 2d 353, 370 (E.D.N.Y. 2010) (internal quotation marks and citation omitted). Alternatively, where a plaintiff does not plead selective treatment based upon impermissible considerations, he can also allege a "class-of-one" equal protection claim. Id. at 371. "In order to adequately allege an equal protection claim on a 'class of one' theory, a plaintiff must demonstrate that: (1) he was 'intentionally treated differently from others similarly situated,' and (2) 'that there is no rational basis for the difference in treatment.'" Vaher v. Town of Orangetown, N.Y., 916 F. Supp. 2d 404, 433 (S.D.N.Y. 2013) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000)). Courts in this Circuit are split regarding the definition of "similarly situated" in selective enforcement and class-of-one cases. Some courts have held that the definitions are the same in both cases, and the plaintiff must "establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential

treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." Roman Catholic Diocese of Rockville Centre, N.Y. v. Inc. Vill. of Old Westbury, No. 09-CV-5195, 2012 WL 1392365, at *12 (E.D.N.Y. Apr. 23, 2012) (internal quotation marks and citations omitted) (collecting cases). Other courts have applied a somewhat less stringent standard in selective enforcement cases, requiring "plaintiffs to show that plaintiff and comparators were 'similarly situated in all material respects,' or that 'a prudent person, looking objectively at the incidents, would think them roughly equivalent.'" Missere, 826 F. Supp. 2d at 561 (quoting Vassallo v. Lando, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008); Yajure v. DiMarzo, 130 F. Supp. 2d 568, 572 (S.D.N.Y. 2001)).

Even applying the less stringent standard, Plaintiff has failed to adequately allege others "similarly situated." Plaintiff's circuitous forty-seven page Complaint only discusses the harmful actions Halsey and the Board took with respect to Plaintiff, but there is no discussion whatsoever of any similarities between Plaintiff and others. See Vaher v. Town of Orangetown, N.Y., 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013) (Dismissing equal protection claim because plaintiff did "not allege that he was treated differently from any identified

individuals, let alone individuals who he claims were similarly situated to him in any respect") (emphasis in original).  The Court will not read between the lines of the Complaint and deem Plaintiff similarly situated to others.  Plaintiff's equal protection claim is therefore DISMISSED.  However, Plaintiff shall be given one opportunity to amend his Complaint.

III.  <u>State Law Allegations</u>

Plaintiff's Complaint contains five explicit causes of action.  However, Plaintiff also discusses several state and local laws in the body of the Complaint.  (<u>See</u> Defs.' Br. at 4.) Defendant argues that Plaintiff's "state law claims" should be dismissed to the extent they are alleged.  (Defs.' Br. at 4.) Plaintiff clarifies in his opposition brief, however, that he is not asserting any state law claims in this lawsuit. (Pl.'s Br. at 11.)  Therefore, Defendants' motion to dismiss Plaintiff's state law claims is DENIED AS MOOT.

CONCLUSION

For the forgoing reasons, Defendants' motion for partial dismissal (Docket Entry 6) is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's equal protection claim is DISMISSED WITHOUT PREJUDICE and with LEAVE TO REPLEAD and the balance of Defendants' motion seeking to dismiss Plaintiff's state law claims is DENIED AS MOOT.  If Plaintiff wishes to file an Amended Complaint, he must do so within twenty (20) days.  If Plaintiff

fails to file an Amended Complaint within twenty (20) days, his equal protection claim will be dismissed with prejudice.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    March __25__, 2015
          Central Islip, New York