```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
CHARLES BUTLER,

                    Plaintiff,           MEMORANDUM & ORDER
                                         14-CV-1429(JS)(AYS)
          -against-

BRIDGEHAMPTON FIRE DISTRICT,
BRIDGEHAMPTON BOARD OF FIRE
COMMISSIONERS, and STEVEN HALSEY,

                    Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:      Lawrence E. Kelly, Esq.
                    11 Cedar Bay Court
                    Bayport, NY 11705

For Defendants:     Steven Gerber, Esq.
                    Maria Tavano, Esq.
                    Christopher Michael McFadden, Esq.
                    Schoeman Updike Kaufman & Gerber LLP
                    551 Fifth Avenue, 12th floor
                    New York, NY 10176
```

SEYBERT, District Judge:

Plaintiff Charles Butler ("Plaintiff") commenced this action against the Bridgehampton Fire District (the "District"), the Bridgehampton Board of Fire Commissioners (the "Board") and Steven Halsey ("Halsey" and collectively, "Defendants") on March 4, 2014. (Compl., Docket Entry 1.) Plaintiff alleges that Defendants violated his constitutional rights while he was the Secretary and Treasurer of the District. Currently pending before the Court is Magistrate Judge Anne Y. Shields' Report and Recommendation dated August 14, 2017, (the "R&R", Docket Entry

45), with respect to Defendants' motion for summary judgment, (Docket Entry 38), recommending that the motion be granted in part and denied in part. Specifically, Judge Shields recommended that: (1) Plaintiff's substantive due process claim be dismissed; (2) Plaintiff's bill of attainder claim be dismissed; (3) Plaintiff's First Amendment retaliation claim be dismissed against Halsey on the grounds of qualified immunity; and (4) Plaintiff's First Amendment retaliation claim against the District proceed to trial. (R&R at 1-2, 21-41.) Defendants filed objections to the R&R. (Defs.' Obj., Docket Entry 46.) For the following reasons, Defendants' objection regarding the Mt. Healthy defense is SUSTAINED, and the R&R is ADOPTED IN PART and REJECTED IN PART.

BACKGROUND

I. Relevant Facts

The Court assumes familiarity with the relevant facts, which are set forth in detail in Judge Shields' R&R. Briefly, for more than thirty years, Plaintiff was the Secretary and Treasurer of the District. (R&R at 2.) The position of Treasurer was an elected position with a three-year term, and the position of Secretary was a non-elected position and appointed by the Board on an annual basis. (R&R at 3.) The events giving rise to this lawsuit began in 2013, when the District attempted to sell a property located near Wainscott Street in Wainscott South, New York (the "Wainscott Property"). (R&R at 4.) During meetings in

April and June 2013, the Board discussed the sale process and authorized the placement of a "for sale" sign on the property and an asking price of $1,500,000.[1]  (R&R at 5.)  At that time, the Board's counsel, John Courtney, ("Courtney"), advised that a sealed bid process was not required.  (R&R at 5.)  In August 2013, shortly after the process began, Plaintiff contacted Courtney via e-mail regarding inquiries he received about the Wainscott Property and how he should respond to them (the "August 2013 E-mail").  (R&R at 5.)  In that email, Plaintiff expressed his frustration and suggested that the District provide potential buyers with a packet of information on the property.  (R&R at 5-6.)  Additionally, he criticized the marketing of the property, referred to the placement of the "for sale" sign without more information to be "ludicrous," and commented that the process "needs to be a whole lot more professional."  (R&R at 6.)  After the August 2013 E-mail, inquiries regarding the Wainscott Property were directed to Courtney.  (R&R at 6.)

After two offers were received--one for $940,000 on behalf of Ronald Lauder (the "Lauder Offer") and one for $605,000 on behalf of William Frank (the "Frank Offer")--the Board voted to accept the Lauder Offer during a meeting on September 25, 2013

---

[1] In May 2013, the Wainscott Property was estimated to be worth $750,000.  (R&R at 5.)  Two years prior, a preliminary evaluation of the value of the property estimated the fair market value at $850,000 to $1,000,000.  (R&R at 4.)

3

(the "September 2013 Meeting"). (R&R at 6.) At that meeting, Plaintiff claims that he objected to the sale process and that he told the Board that a notice and sealed bid process was necessary. (R&R at 7.) Subsequently, William Frank increased his offer to $1,010,000 (the "Second Frank Offer"). Another potential buyer, Ms. Zippelius, also expressed interest in making an offer. (R&R at 7.)

The Board ultimately declined to go forward with the Lauder Offer and elected to proceed with a sealed bid process. (R&R at 8.) There were two sealed bids for the property--one by Ms. Zippelius for $1,200,000 (the "Zippelius Bid") and one by Mr. Lauder for $940,000 (the "Lauder Bid"). (R&R at 9.) Prior to the opening of the sealed bids on October 23, 2013, the Zippelius Bid was withdrawn by way of a letter from Lauder's attorney. (R&R at 9.) Subsequently, the Board accepted the Lauder Bid.[2] (R&R at 9.)

In August 2013, the same month the sale process began, the District retained the Pinsky Law Group to review its finances. (R&R at 10.) On October 2, 2013, the Pinsky Law Group issued its

---

[2] In a series of e-mails submitted with his opposition to Defendants' summary judgment motion, Plaintiff communicated with Mr. Zippelius in January 2016 regarding the reasons for the withdrawal of the bid. (R&R at 9-10.) Mr. Zippelius stated that he believed that he was asked to drop his bid by an attorney who contacted him before the sealed bids were opened. (R&R at 10.)

4

report summarizing its findings (the "Pinsky Report" or the "Report"), which included irregularities and violations of the law. (R&R at 11.) The Pinsky Law Group found that certain payments were made without corresponding receipts or vouchers and that some payments were made from the wrong funds. (R&R at 11.) Additionally, the Report stated that a number of checks had only one signature instead of two signatures as required by the District's policy, including three checks payable to Plaintiff. (R&R at 11; Pinsky Report, Ex. A. to Pinsky Decl., Docket Entry 38-10, at 2, 6-7.) The Report clarified that it "d[id] not assign blame" or "make accusations" but "simply note[s] errors or irregularities." (Pinsky Report at 3.)

On October 22, 2013, the day before the Lauder Bid was accepted, the Board voted to convert the Secretary position to an unpaid position and to reduce the compensation for Treasurer to $1,200.[3] (R&R at 11.) The Board advised Plaintiff by letter that he was relieved of his Secretary duties but would continue to receive his Secretary's salary through December 31, 2013. (R&R at 12.) They also advised him that he should continue to perform his

---

[3] In 2013, Plaintiff was paid an annual salary of $30,000 for performing his duties as Treasurer and $25,000 for performing his secretarial duties. (Defs.' 56.1 Stmt., Docket Entry 38-11, ¶ 60.)

5

Treasurer duties.[4]  After receiving the letter, Plaintiff stopped coming to work for the remainder of 2013.[5]  (R&R at 12-13.)  At the January 2014 meeting, the Board discussed the fact that Plaintiff failed to attend the Board's last six meetings and failed to perform his duties as Treasurer.  (R&R at 13-14.)  Further, the Board discussed its belief that Plaintiff forged the Chief's name on a letter and used District funds for personal expenditures.  (R&R at 14.)  The Board subsequently voted to reduce the Treasurer salary to zero for 2014 and to terminate Plaintiff's health insurance benefits.  (R&R at 14.)

II. <u>Procedural History</u>

As stated, Plaintiff filed the Complaint on March 4, 2014.  On May 16, 2014, Defendants filed a motion to dismiss.  (Defs.' Mot. to Dismiss, Docket Entry 6.)  On March 25, 2015, the Court granted the motion in part and dismissed Plaintiff's equal protection claim with leave to replead.  <u>Butler v. Bridgehampton Fire District</u>, No. 14-CV-1429, 2015 WL 1396442 (E.D.N.Y. Mar. 25, 2015).  Plaintiff ultimately declined to replead his equal protection claim, and Defendants answered the Complaint on May 18, 2015.  (Answer, Docket Entry 16.)

---

[4] At the same meeting, the Board retained the Pinsky Law Group to manage the District's financial affairs.  (R&R at 12.)

[5] The Board sent Plaintiff two letters in December 2013 directing Plaintiff to come to work and fulfill his duties as Treasurer.  (R&R at 13.)

On November 28, 2016, Defendants moved for summary judgment on Plaintiff's First Amendment retaliation, substantive due process and bill of attainder claims. (Defs.' SJ Motion, Docket Entry 38.) Plaintiff filed his opposition on January 3, 2017, and Defendants filed a reply in further support of their motion on January 17, 2017. (Pl.'s Opp., Docket Entry 39; Defs.' Reply, Docket Entry 40.) On April 12, 2017, the Court referred the motion to Judge Shields for a report and recommendation on whether the motion should be granted, which she issued on August 14, 2017. (Referral Order, Docket Entry 44; R&R.) On August 25, 2017, Defendants filed objections to the R&R. (Defs.' Obj.) Plaintiff has not filed a response.

III. The R&R

First, Judge Shields addressed Plaintiff's First Amendment retaliation claim. (R&R at 21-27.) At the outset, she analyzed whether Plaintiff's speech was protected pursuant to Garcetti v. Ceballos, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d. 689 (2006). (R&R at 21.) In Garcetti, the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 547 U.S. at 421, 126 S. Ct. at 1960. In other words, Garcetti stands for the proposition that statements of public employees may not be

7

protected under the First Amendment if they are made pursuant to the public employee's official duties.

Judge Shields considered Plaintiff's argument that Garcetti does not apply because Plaintiff was an elected official and not an employee of the District. (R&R at 21-22.) She noted that the Second Circuit has not ruled on whether the speech of an elected official is analyzed under the Garcetti framework. (R&R at 22.) As a result, Judge Shields reviewed cases outside the Second Circuit and adopted the rule promulgated by the majority of courts that have considered the issue--that Garcetti does not apply to the speech of elected officials. (R&R at 22.) Next, Judge Shields discussed whether Plaintiff's speech was made in his capacity as Treasurer, a position to which he was elected, or Secretary, a position to which he was appointed. (R&R at 23.) She focused on the two incidents forming the basis of Plaintiff's claim--the August 2013 E-mail and Plaintiff's alleged speech at the September 2013 Meeting--and determined that because the speech involved the marketing and sale of the Wainscott Property and Plaintiff was responsible for managing the District's finances and maximizing revenue, he engaged in the alleged speech in his capacity as Treasurer. (R&R at 24-25.) In light of this determination, Judge Shields concluded that Garcetti did not apply and that Plaintiff's speech was protected by the First Amendment. (R&R at 25.)

Next, Judge Shields analyzed whether the retaliation claim should be dismissed based on the defense articulated by the Supreme Court in Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977). (R&R at 26.) Defendant argued that it was entitled to the Mt. Healthy defense because, notwithstanding Plaintiff's speech, it would have taken the same actions against Plaintiff based on the findings of the Pinsky Report and Plaintiff's failure to come to work or attend meetings during the last two months of 2013. (R&R at 26.) While Judge Shields recognized that "Defendants ma[de] a strong case for the application of the Mt. Healthy defense," she concluded that because the trier of fact "may reasonably find that the District's acts with respect to Plaintiff were substantially motivated by his protected speech," summary judgment should be denied on this ground. (R&R at 26-27.)

Judge Shields also determined that Halsey, a member of the Board, was entitled to qualified immunity. (R&R at 30.) She found that Halsey's actions were objectively reasonable in light of the law in this area and as a result, recommended that the Court grant Halsey's motion for summary judgment on Plaintiff's First Amendment retaliation claim. (R&R at 30-31.)

Second, Judge Shields considered whether Plaintiff's substantive due process claim should be dismissed. (R&R at 31-34.) She found that Plaintiff had failed to demonstrate a

9

protected interest in either the Treasurer or Secretary position, and alternatively, that none of the conduct alleged "c[ame] close to the conscience-shocking conduct required to state a claim." (R&R at 34.) As a result, she recommended that Defendants' motion for summary judgment on the substantive due process claim be granted. (R&R at 34.)

Third, Judge Shields discussed the bill of attainder claim. (R&R at 35-41.) She determined that Plaintiff failed to show that the Board's actions constituted legislative acts subject to the Constitution's prohibition on bills of attainder. (R&R at 38-39.) Further, she found that the Board's actions did not constitute punishment under either the legislative, functional, or motivational tests. (R&R at 39-41.) Accordingly, she recommended that the Court grant Defendants' motion for summary judgment on the bill of attainder claim. (R&R at 41.)

To summarize, Judge Shields recommended that Defendants' motion for summary judgment on the First Amendment retaliation claim be denied as to the District but granted as to Halsey. Additionally, she recommended that the remaining claims be dismissed. (R&R at 41.) Defendants' objections relate to the disposition of the First Amendment retaliation claim only.

DISCUSSION

I. Legal Standard

"When evaluating the report and recommendation of a magistrate judge, the district court may adopt those portions of the report to which no objections have been made and which are not facially erroneous." Walker v. Vaughan, 216 F. Supp. 2d 290, 291 (S.D.N.Y. 2002) (citation omitted). A party may serve and file specific, written objections to a magistrate judge's report and recommendation within fourteen days of being served with the recommended disposition. See Fed. R. Civ. P. 72(b)(2). Upon receiving any timely objections to the magistrate judge's recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b)(3). A party that objects to a report and recommendation must point out the specific portions of the report and recommendation to which they are objecting. See Barratt v. Joie, No. 96-CV-0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002).

When a party raises an objection to a magistrate judge's report, the Court must conduct a de novo review of any contested sections of the report. See Pizarro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). However, where a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and

11

Recommendation only for clear error." Walker, 216 F. Supp. 2d at 291 (internal quotation marks and citation omitted).

Neither party has objected to Judge Shields' recommendations that the Court dismiss Plaintiff's First Amendment retaliation claim against Halsey and dismiss Plaintiff's substantive due process and bill of attainder claims against all Defendants. The Court has reviewed those portions of the R&R for clear error and finds none. As such, the Court ADOPTS Judge Shields' recommendations regarding dismissal of those claims.

## II. Defendants' Objections

### A. The Mt. Healthy Defense

Defendants argue that Judge Shields erred in recommending that summary judgment be denied on the First Amendment retaliation claim because they are entitled to the Mt. Healthy defense as a matter of law. (Defs.' Obj. at 5.) They argue that there is "overwhelming evidence" that Plaintiff's failure to perform his job duties led to the reduction of his salary and benefits and removal from the Secretary position. (Defs.' Obj. at 5.) Defendants further argue that there is no evidence that Plaintiff's speech impacted the decisions of the District. (Defs.' Obj. at 6.) According to Defendants, the record clearly shows that when the District took action, it relied on the findings of the Pinsky Law Group and prior auditors, which showed "serious

violations of law and procedures," as well as the fact that Plaintiff stopped to coming to work. (Defs.' Obj. at 7.)

To state a claim for First Amendment retaliation, a plaintiff must demonstrate "(1) [that] his speech addressed a matter of public concern; (2) [that] he suffered an adverse employment action; and (3) a causal connection between the speech and the adverse employment action." Krukenkamp v. State Univ. of N.Y. at Stony Brook, 395 F. App'x 747, 749 (2d Cir. 2010). In Mt. Healthy, the Supreme Court held that when a plaintiff has shown that his speech was protected and that it was a substantial motivating factor in the employment decision, the district court should consider whether the defendant "ha[s] shown by a preponderance of the evidence that it would have reached the same decision . . . in the absence of the protected conduct."[6] Mt. Healthy, 429 U.S. at 287, 97 S. Ct. at 576. Thus, Defendants are entitled to summary judgment "if they can show that a reasonable jury would have to find by a preponderance of the evidence that [Defendants] would have dismissed [Plaintiff] even had they not learned of [the protected] speech." Nagle v. Marron, 663 F.3d 100, 113 (2d Cir. 2011). The Second Circuit has instructed that defendants attempting to establish their entitlement to the Mt.

---

[6] The Court assumes for purposes of this discussion that Plaintiff's speech was protected and that he could demonstrate a causal relationship between his speech and the Board's actions.

13

Healthy defense "may not rely solely on the occurrence of unprotected misconduct: they must also articulate and substantiate a reasonable link between that misconduct and their specific adverse actions." Smith v. Cty. of Suffolk, 776 F.3d 114, 123 (2d Cir. 2015) (emphasis omitted).

The Court finds that Defendants are entitled to the Mt. Healthy defense. Defendants have presented evidence of significant irregularities in the District's finances, including the findings in the Pinsky Report completed in October 2013 and in audits from prior years. Cf. Nagle, 663 F.3d at 112 (holding that Defendants were not entitled to the Mt. Healthy defense when "[t]here was no pattern of bad evaluations, complaints, and warnings . . . . [and] no specific instance of misconduct"). The Pinsky Report memorialized the firm's detailed review of the District's finances, which revealed missing invoices and vouchers, checks paid without the proper approvals, amounts paid from incorrect funds, at least two serious violations of law, and several misdemeanors. (Pinsky Report at 4-9.) Prior audits conducted in 2009, 2010, 2011, and 2012 also "revealed several significant deficiencies that were not corrected from year to year." (Defs.' 56.1 Stmt. ¶¶ 45-48.) Additionally, despite several letters from the Board, Plaintiff refused to come to work for several months at the end of 2013. (Defs.' 56.1 Stmt. ¶¶ 54, 58.) When the Board subsequently eliminated his reduced salary

14

for 2014 and health benefits, they cited the following reasons for their decision: (1) his failure to attend the six prior meetings; (2) his failure to perform his duties for three months; (3) the District's belief that Plaintiff forged the Chief's signature on a letter; and (4) the District's belief that Plaintiff utilized District funds for his own purposes.  (January 2014 Minutes, Ex. D. to Gerber Decl., Docket Entry 38-6, at 3.)

Plaintiff has failed to come forward with any evidence to support his allegation that the Board's actions were the result of his comments regarding the sale of the Wainscott Property.  In fact, Plaintiff admitted during his deposition that other than his belief that the Board's actions were retaliation for his protected speech, he was not aware of any facts supporting that contention. (See Butler Dep., Ex. B to Gerber Decl., Docket Entry 38-3, 276:14-18 ("Other than that belief and the fact of the letter, do you know of any fact that would support that this letter resulted from your alleged speech[?]"  "No."); Butler Dep. 288:18-23 ("So basically other than what is contained in [the Board's letter and motion], you know of no facts indicating that the [B]oard's adverse actions to you were retaliatory; is that correct?"  "That's correct.")  see also Butler Dep. 279:21-280:10, 292:24-293:10).)

Based on the evidence proffered by Defendant, the Court finds that a reasonable jury would have to conclude that the Board would have taken the same actions against Plaintiff in the absence

15

of the protected speech.  Therefore, Defendants' objection on this ground is SUSTAINED, and Plaintiff's First Amendment retaliation claim is DISMISSED.[7]

## CONCLUSION

For the foregoing reasons, Defendants' objection regarding the Mt. Healthy defense (Docket Entry 46) is SUSTAINED, and the R&R (Docket Entry 45) is ADOPTED IN PART and REJECTED IN PART.  Defendants' motion for summary judgment (Docket Entry 38) is GRANTED.  All of Plaintiff's claims are DISMISSED WITH PREJUDICE.  The Clerk of the Court is directed to enter judgment accordingly and mark the case CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September __30__, 2017
       Central Islip, New York

---

[7] In light of the Court's determination that Defendants are entitled to the Mt. Healthy defense, the Court need not address Defendants' remaining objections.